THE STATE v. WARFORD, *Appellant.*

DIVISION TWO.

| 106 | 55 |
| 109 | 229 |
| 111 | 454 |
| 106 | 55 |
| 121 | 150 |
| 106 | 55 |
| 136 | 137 |
| 106 | 55 |
| 178 | 5 37 |
| 179 | 3 321 |

1. **Burglary and Larceny** : BREAKING : EVIDENCE. Where on a trial for the burglary and larceny of a saddle from a stable, the evidence shows that the saddle was hung in its usual place on Sunday and was not missed until the following Wednesday ; that the doors of the stable were intentionally kept fastened to restrain some mares and colts therein, and that it was not known that the doors were left open, such evidence is sufficient to warrant the jury in inferring the fact of the *breaking* the stable by the thief.

2. ———— : RECENT POSSESSION OF STOLEN PROPERTY : PRESUMPTION. The presumption of guilt arising from the recent possession of stolen property applies to burglary and larceny as well as to larceny.

3. ———— : ———— : ————. The possession, to raise the presumption of guilt, must, however, be an exclusive possession.

4. ——— : ——— : ———. Where on the trial of two persons for burglary and larceny, the evidence shows that the joint possession of the stolen property did not begin until five or six weeks after the larceny, such joint possession is too remote to create against either of the defendants a presumption of guilt as to the burglary.

5. **Criminal Practice :** REMARKS OF PROSECUTING ATTORNEY. The argument of the prosecuting attorney on a trial for burglary and larceny, that conviction of petit larceny would impose large expense on the taxpayers of the county, is improper.

*Appeal from Daviess Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

REVERSED AND REMANDED.

*Hicklin & Yates* for appellant.

(1) Before the accused can be convicted of burglary the evidence must show affirmatively and definitely that the doors through which defendant might have entered were closed. *State v. Kennedy*, 16 Mo. App. 287 ; *Lowder v. State*, 63 Ala. 143 ; s. c., 35 Am. Rep. 9 ; *Williams v. State*, 52 Ga. 580. It is not sufficient to prove that it was the custom to keep the doors closed. *Green v. State*, 68 Ala. 539. (2) The saddle was not found in the exclusive possession of the defendant. Hence no presumption of guilt could arise as to him. The state's sixth instruction is error, because it asserts that if the saddle was in the possession of defendant, "or of defendant and another," the law presumes his guilt. Such is not the law. *State v. Castor*, 93 Mo. 250 ; *Taliaferro v. Commonwealth*, 77 Va. 411 ; *Shropshire v. State*, 69 Georgia, 273 ; *State v. Tilton*, 63 Iowa, 117 ; s. c., 18 N. W. Rep. 716 ; 1 Greenleaf, Ev., sec. 33 ; Wharton, Crim. Ev., sec. 758. (3) Defendant's refused instruction should have been given. He had the right to have the jury instructed upon the theory established by his own, or any other, testimony in the case. *State v. Banks*, 73 Mo. 592 ; *State v. Anderson*, 86 Mo. 309. (4) The mere possession of stolen goods is not sufficient to create

The State v. Warford.

the presumption of burglary. The rule in larceny does not apply. The cases of *State v. Babb*, 76 Mo. 501, and *State v. Wheeler*, 79 Mo. 366, should not be adhered to. 3 Greenleaf, Ev., sec. 31, and authorities cited; 1 Wharton, Crim. Ev. [9 Ed.] sec. 763; 1 Wharton, Crim. Law [9 Ed.] sec. 818; 1 Wharton, Crim. Law [7 Ed.] sec. 729; *Stewart v. People*, 42 Mich. 255; *State v. Shaffer*, 59 Ia. 290; *State v. Tilton*, 63 Ia. 117; 2 Bishop, Crim. Proc., sec. 747, note 3; *Jones v. State*, 6 Parker, 125; *Com. v. McGarty*, 114 Mass. 299; *State v. Reid*, 20 Iowa, 413; *State v. Hayden*, 45 Iowa, 11; *People v. Gordon*, 40 Mich. 716; *People v. Noregea*, 48 Cal. 123; *People v. Mitchell*, 55 Cal. 236. (5) Remarks in a closing argument, *dehors* the record, are reversible error when calculated to mislead the jury, or excite its bias. *State v. Young*, 99 Mo. 666; *State v. Jackson*, 95 Mo. 623; *State v. Reed*, 71 Mo. 200; *State v. Kring*, 64 591; *State v. Mahley*, 68 Mo. 316; *State v. Martin*, 74 Mo. 547. The rule has even been extended to civil cases with like effect. *Gibson v. Zeibig*, 24 Mo. App. 65; *Fathman v. Tumilty*, 34 Mo. App. 236; *Holliday v. Jackson*, 21 Mo. App. 660; *Ritter v. Bank*, 87 Mo. 574.

*John M. Wood*, Attorney General, and *J. A. Selby* for the State.

(1) The great majority of facts proven in court are not susceptible of mathematical demonstration, and it is only a moral certainty that is required. It is only by giving credence to what a credible witness believes or thinks to be true that juries are enabled to arrive at a verdict in the great majority of cases. 1 Greenleaf, Ev. [14 Ed.] sec. 1, p. 3; *State v. Babb*, 76 Mo. 504; 1 Greenleaf, Ev. [14 Ed.] sec. 10, p. 17. (2) The sixth instruction for the state is not erroneous for the reason that in the sixth instruction for defendant the court sufficiently explains what is meant by the phrase, "in the possession of defendant and another," by instructing

the jury that, although they might find the stolen property was in the possession "of defendant and another," yet, unless they believe defendant and the other person were acting in concert, they might acquit defendant. *State v. Bradley*, 31 Mo. App. 319; *State v. Ware*, 69 Mo. 332; *State v. Mathews*, 98 Mo. 130. (3) The refusal to give the instruction asked by defendant was proper. There was no evidence upon which to base it. *State v. Foster*, 61 Mo. 549; *State v. Jones*, 64 Mo. 391; *State v. Gilmore*, 95 Mo. 554; *State v. Kelly & Johnson*, 9 Mo. App. 512; *State v. Ware*, 69 Mo. 332. (4) The sixth instruction for the state, having left to the jury the question of fact as to whether or not the saddle in question was in the barn at the time; as to whether or not the doors of the barn were fastened, as described by the witnesses at the time of alleged burglary; as to whether or not the barn was broken into and entered, and, lastly, as to whether the saddle in question was stolen therefrom—then the further charge that, if recently thereafter the saddle was found in the possession of defendant, it raised a presumption of his guilt not only of the larceny, but also of the burglary; and that unless defendant satisfactorily accounted for his possession in a manner consistent with his innocence, such presumption became absolute, as to his guilt of both crimes, is a correct statement of the law. *State v. Babb*, 76 Mo. 501; *State v. Wheeler*, 79 Mo. 366; *Pickman's Case*, 2 East P. C. 1035; 1 Greenleaf, Ev. [14 Ed.] sec. 34; 3 Greenleaf, Ev. [13 Ed.] sec. 32; *State v. Brewster*, 7 Vt. 122. Especially is the sixth instruction for the state correct, when taken in consideration with all the other instructions on that subject and other criminating circumstances shown by the testimony in the case. *Stewart v. People*, 42 Mich. 255; *State v. Wheeler*, 79 Mo. 366. (5) As long as an attorney in his argument keeps within the record, his choice of words, line of argument, inference and deductions from

testimony, his use of logic or his want of logic, and his method of argument, are all matters that should be left to his own taste and experience ; and his proper control should be left to the discretion of the trial court, and only upon the clearest proof that such discretion has been abused should there be a reversal for this cause. *State v. Emory*, 79 Mo. 461 ; *State v. Ramsey*, 92 Mo. 133 ; *State v. Griffin*, 87 Mo. 608 ; *State v. McNamara*, 100 Mo. 100 ; *State v. Findley*, 101 Mo. 224; *State v. Elvins*, 101 Mo. 246 ; *State v. Musick*, 101 Mo. 273.

MACFARLANE, J.—Defendant and one John Webb were jointly indicted, by a grand jury of Daviess county, of the burglary and larceny of a saddle belonging to one Lewis Best. There was a dismissal as to Webb, and defendant was tried and convicted. From the judgment he appeals.

I. Defendant complains that the evidence of burglary was not sufficient to justify his conviction of that crime.

The saddle, which was the subject of the larceny, was kept in the barn of Lewis Best, the owner. The barn was about thirty-two by forty-eight feet in dimensions, and had a driveway through it from east to west, with stables on each side of the west end. The driveway was inclosed by large double doors at each end, one above the other, the saddle was kept hanging on a nail in the partition on the south side of the stable. The doors were fastened by latches. The saddle was hung in its usual place on Sunday, and was not missed until the succeeding Wednesday. Between those dates it was taken. Best and two employes, Powell and Cunningham, had charge of the barn during this time. Neither of the first two could testify positively that the doors were kept closed and fastened during the whole of this interval. They could not be positive ; they supposed they were ; they were generally shut. Cunningham, who had charge of Best's horses, was more positive. He testified that at the time three mares were kept in the stable, one with a young colt, the other two to have colts. He testified the

The State v. Warford.

doors were kept fastened to keep the mares inside, the weather, as he remembered, being stormy, and if the door had been left open the mares would have escaped from the stable. He could not remember positively of fastening the doors on these particular days, nor of seeing that they were kept fastened.

The substantive facts to be proved in this case, in order to support the conviction for the crime of burglary, were that of "breaking and entering" the stable, in which the saddle was at the time stored, with the intent to steal therefrom. While proof of breaking was necessary, the use of very slight force, if proved, will sustain the conviction. Displacing the fastenings provided for the security of the barn and stable and their contents would constitute a sufficient breaking under the statute. This proposition is not controverted by defendant, but he contends that the evidence did not show affirmatively and definitely that the doors were closed when defendant might have entered, and consequently there was not sufficient evidence of breaking.

It is seldom that a burglary can be proved by the direct and positive evidence of witnesses who have knowledge of the fact. The inference of guilt, in most instances, has necessarily to be drawn from other facts satisfactorily proved. The sufficiency of the evidence in any case belongs exclusively to the jury; the competency of the evidence is to be determined by the court. "By *satisfactory* evidence, which is sometimes called *sufficient* evidence, is intended, that amount of proof which ordinarily satisfies an unprejudiced mind, beyond reasonable doubt. The circumstances which will amount to this degree of proof can never be previously defined; the only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of a common man; and so to convince him, that he would venture to act upon that conviction, in matters of the highest concern and importance to his own interests." 1 Greenl. Ev., sec. 2, p. 4.

The question is whether, from facts satisfactorily proved, a legitimate inference can be drawn that the doors were fastened when the thief entered the stable and took the saddle therefrom.

It would have been impossible for any one of the three witnesses, who were engaged in the ordinary work and business of the farm, to have testified positively that at no time during the interval from Sunday to Wednesday the doors had not been left open for some period. To require such direct and positive proof would be almost equivalent to saying that a burglary could not be proved when committed in a barn, stable or other out-house on a farm, as to keep a constant watch over them would be wholly impracticable.

The evidence in this case shows that, at the time of the larceny, the barn was intentionally kept fastened for a particular purpose. So far as the witnesses knew the doors were fastened all the time; that is, none of them knew of them being left open. If they had been left open the mares could have gone outside which fact would have been known. We think all this evidence competent to go to the jury as tending to prove that the door was fastened when the thief entered, and sufficient in probative force to justify the jury in the inference that a burglary was committed.

II. The court gave the following instruction on behalf of the state: "6. The court instructs the jury that if they believe from the evidence that the saddle in question was in the barn of Lewis Best, and that the doors of the said barn were fastened in the manner described by the witnesses, and that said barn was broken and entered, and that said saddle was stolen from said barn, and that recently after said saddle was so stolen, and, after said breaking and entering, said saddle was found in the possession of the defendant, or in the possession of defendant and another person, then the law presumes that the defendant is guilty of both the burglary and larceny, and, unless the defendant

accounts for such possession to the satisfaction of the jury in a manner consistent with his innocence, then the presumption of his guilt, both of the burglary and larceny, becomes conclusive against him.''

At the request of defendant the court instructed the jury as follows :   '' Although the saddle was in the wagon in which defendant John Webb traveled to Kansas, yet, if the jury find that defendant had nothing more to do with said saddle than to ride the same while in Kansas, and that said Webb, without further control or dominion over said saddle by defendant, sold the same to witness Belcher, and that Webb and defendant were not acting in concert, then said saddle was not in the possession of the defendant within the meaning of the state's instruction.''

It is contended that the first of the instructions as a whole was improper, for the reason that the mere possession of goods burglariously stolen is not sufficient to create the presumption of guilt in the one in whose possession they were found.   The rule is well settled in this state, as well as others, that ''the presumption which the law raises as to recent guilty possession is not confined to theft, nor to any class or species of felony, but is applied even to cases where the highest penalties are inflicted, as in a case of arson, * * * and * * * of burglary and larceny.''   *State v. Babb*, 76 Mo. 503, and authorities cited ; *State v. Wheeler*, 79 Mo. 366.   This objection cannot be sustained.

III.   The evidence bearing upon the question of possession of the stolen goods, soon after the larceny, was obtained from the testimony of defendant, John Webb, who was jointly indicted with him, Belcher, a cousin of each of them, who resided near Weston, and Light, the marshal of Weston, who arrested defendant.

It is undisputed that defendant and Webb some time in May started from the neighborhood in which the saddle was stolen, and traveled in a two-horse wagon to Kansas, remained a few days and returned to

Belcher's home near Weston, and that the saddle was carried in the wagon throughout the trip, each of the parties using it when he desired to do so.

Webb testified that a few days before they started to Kansas defendant took him to an out-of-the-way place and showed him the saddle which he said he was going to take along. They started after night. When they got near where the saddle was concealed, they brought and put it in the wagon. Webb also testified that, when they got to Belcher's on their return from Kansas, defendant told Tom Belcher that he had a saddle he wanted to leave with him, and that Tom took it in the house and put it under the bed.

Defendant testified that he never saw the saddle until the morning after they started to Kansas; it was then in the wagon, and Webb told him he had brought it; that he made no claim to the saddle at any time, and, when they got to Belcher's, Webb sold it to Tom.

Belcher testified that when they came to his house they had the saddle in the wagon, and Webb claimed to own it and sold it to him. Light, the marshal, who arrested defendant, testified that he found him at Belcher's, sitting outside the door. When he reached the house, old man Belcher asked if he wanted him, and defendant answered, "No, I am the man you want." Witness told him he wanted the saddle also. They said, "It is in the house." No explanation for the arrest was asked. This was in substance the evidence as to the possession of the saddle.

It would be pushing the rule too far to require of one accused of a crime an explanation of his possession of the stolen property, when such possession could also, with equal right, be attributed to another. He could not reasonably be required to account for or explain the possession of another. "To raise the presumption of guilt from the *possession* of the fruits or the instruments of crime by the prisoner, it is necessary that they be

found in his *exclusive* possession." *State v. Castor*, 93 Mo. 250; 3 Greenl. Ev., sec. 33.

We must conclude that the instruction in declaring that a presumption of guilt arose if the saddle, recently after the burglary, was found in the possession of defendant and another person did not properly declare the law.

IV.  After careful consideration and much doubt we have reached the conclusion that the sixth instruction given defendant did not cure the fault of the sixth given the state.  If the latter had confined the possession to defendant and Webb, then the former instruction might have sufficiently explained the character of the joint possession referred to in the latter which would create the presumption of guilt.

But was there such unexplained and recent joint possession of both defendant and Webb as would reasonably raise an inference, even, that the burglarious act charged was their joint act.  If the joint possession raise a presumption of guilt against one, it does also against the other.  There is no evidence tending to prove that the joint possession commenced until the stolen property was placed in the wagon which was under their joint control.  The possession then of both did not commence until five or six weeks after the larceny.  No connection or confederacy between the parties was shown to have existed prior to the preparations for their journey to Kansas.  There is no evidence that the saddle was in the joint possession of these parties for a considerable time after it was stolen, during which time it must have been in the exclusive individual possession of one or the other of them.  When the stolen property was put into the wagon, one party may possibly have been wholly without knowledge of the fact that it had been stolen, or he may have known that it was stolen but took no further responsibility therefor, or he may have known it was stolen and undertook to assist in concealing and disposing of it; but none of

The State v. Warford.

these facts, however well proved, or however criminal in themselves, would make him guilty of breaking into the barn with the intent to steal, much less would the mere fact of having the saddle in the wagon without other explanation raise a presumption of such breaking. Under the evidence, we think, the joint possession too remote to create a presumption that either Webb or defendant was guilty of the burglary.

The joint possession is also fully explained by the testimony of Webb, who was called as a witness by the state, and the presumption of joint guilt is thereby rebutted.   If the evidence of Webb should be believed by the jury, then they could find that the saddle was in the exclusive possession of defendant when shown to Webb by him, and that possession was sufficiently recent, if unexplained, to create a presumption of guilt.

V.   A defendant should be tried and convicted upon the evidence.   Prosecuting officers should avoid remarks or arguments which are calculated to improperly influence juries to go outside the evidence and instructions to determine the grade of the offense for which a conviction should be had.   Proper zeal is commendable, but it should not, particularly in state prosecutions, be allowed to carry the prosecutor beyond the law and evidence.   The law fixes the grades of crimes, and the state in enforcing the laws should not undertake to change the grades fixed by itself to avoid the necessary expense resulting from a conviction therefor.   The argument that a conviction for petit larceny would impose on the county and taxpayers large expense should have been avoided.   The people by their representatives have fixed the punishment for petit larceny, and the law should have its course.

For the errors mentioned the judgment is reversed and cause remanded.   All concur.