**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roger Wayne FULLMER, Defendant-
Appellant.**

**No. 71–1313.**

United States Court of Appeals,
Seventh Circuit.

March 21, 1972.

Julius L. Sherwin, Chicago, Ill., Theodore R. Sherwin, Chicago, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge, and GRANT*, District Judge.

DUFFY, Senior Circuit Judge.

This is an appeal from a judgment of conviction after a jury trial on Count I of a 3-Count indictment.

Count I charged defendant, a licensed firearms dealer located at 2085 Blackhawk Road, Rockford, Illinois, with knowingly and wilfully conducting the business of a firearms dealer on premises not licensed to him at a County Fair in Mercer County, Illinois.

* Chief District Judge Robert A. Grant of the Northern District of Indiana, is sitting by designation.

Defendant had an excellent reputation. In 1962, he was employed by Western Electric Company, remaining with them for one and a half years at which time he enlisted in the Marine Corps. He served in the Corps for three years and was honorably discharged. He was a member of the Marine Corps Reserve for a period of five years.

Defendant returned to work for Western Electric Company and stayed with it for eleven more years. After passing an examination, he worked for the Winnebago County, Illinois, Sheriff's Department for a period of four years. Part of his duty was to drive patrol cars. Thereafter he was appointed to the Communications Section.

After defendant left the Marine Corps, he started a business called Chevron Arms. In 1957 he applied for and was granted a federal license as a firearms dealer. This license was renewed annually and was in full force and effect at the time of the trial. His business consisted of selling at wholesale and retail ammunition, reloading components and some firearms.

In his business at Chevron Arms, defendant dealt with gun shops, other dealers and retail customers. Usually his business dealings were at the Rockford headquarters, but he also took orders and made deliveries.

In the course of his ammunition and firearms business, he attended gun shows when his duties as Deputy Sheriff of Winnebago County permitted.

During his eleven years as a federally licensed firearms dealer and until the occurrences on October 11 and 12, 1969, defendant never was censored by the Alcohol, Tobacco and Firearms Division which administers the Federal Gun Control Act and the National Firearms Act.

On October 11 and 12, defendant attended the Aledo Gun Show held at the Mercer County Fair. As an exhibitor, he had three tables in an L-shaped arrangement. He unloaded certain merchandise from his closed-body, two-ton van. He displayed various calibers of ammunition and gun-loading components.

Defendant's truck was parked outside of the Aledo Gun Show. Merchandise in the truck valued at $16,000 was not on display and was scheduled by defendant for deliveries to other dealers to fill prior orders on his return to Rockford from the Aledo Gun Show. The distance from Aledo to Rockford is about 150 miles.

There were 300 to 400 exhibitors at the Aledo Show. They included gun dealers from in and out of the State of Illinois, coin dealers and antique dealers.

On October 11, defendant made about fifty sales consisting, in part, of shot and lead balls. Defendant kept track of his sales by ringing them up on a cash register. At the end of each day he reported to the Illinois License Department and paid the sales tax thereon.

On October 12, defendant sold two boxes of cartridges and a box of shotgun shells to one Agent Borcia who was unknown to defendant. Borcia told defendant that a Mr. Chismark, a dealer, had sent him to defendant to pick up two boxes of ammunition and a box of shotgun shells. Defendant looked down the aisle and saw Chismark who nodded to him. Defendant nodded back. Defendant assumed that it was Chismark who had sent Borcia to him.

Agent Truska arrested defendant on October 12, 1969, at the Gun Show. All of defendant's merchandise was removed from the table display and loaded into defendant's truck. Truska ordered defendant to follow in defendant's truck to the Rock Island Police Department. Defendant was then taken inside, fingerprinted, photographed and was locked in jail over night. When taken before a United States Commissioner the following day, he was released upon his own recognizance.

As a result of defendant's arrest, he was severed from his employment as Deputy Sheriff of Winnebago County in December 1969. Also, he ceased operation of his firearms business in June

1970. His only source of income thereafter was from his employment at the Buffalo Rock Gun Shop.

Agent Truska admitted that all of the merchandise which was displayed by defendant on his table at the Gun Show or which he had in his truck was, in itself, legitimate merchandise.

The agents seized defendant's truck and merchandise without a warrant. The truck was later returned to the defendant, but the bulk of the merchandise therein which had been seized still remains at the Arsenal where it originally was stored. It is not disputed that the value of the seized goods was approximately $16,000 which was determined after an inventory.

▬▬▬ We hold that the prosecuting attorney made two inflammatory, highly prejudicial statements to the jury which constituted reversible error.

The prosecutor told the jury "We have filed the case here under the Gun Control Act of 1968, which was passed by Congress to provide support for Federal, State and local enforcement agencies and officials in their fight against crime and violence. . . . " An objection by defendant's counsel was overruled by the Court.

Also, the prosecutor stated "I don't have to tell you ladies and gentlemen, what is happening today in our country with people—not the man who shoots his wife or that kind—but people who are using ammunition and guns for sniping and creating disturbances, and so forth." Again, an objection by defendant's counsel was overruled by the trial court.

Defendant relies on such decisions as Viereck v. United States, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943) and United States v. Hayward, 136 U.S.App. D.C. 300, 420 F.2d 142 (1969) to support his argument that inflammatory remarks made by the prosecutor and admitted by the trial court are prejudicial and reversible error.

In *Viereck, supra*, the Supreme Court reversed a similar situation where inflammatory remarks were used by a prosecutor. The Supreme Court said in passing:

"At a time when passion and prejudice are heightened by * * * emotions we do not doubt that these remarks addressed to the jury were highly prejudicial, and that they were offensive to the dignity and good order with which all proceedings in court should be conducted. We think the trial judge should have stopped counsel's discourse without waiting for an objection. 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' " Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1934)

The Court of Appeals for the District of Columbia reversed a District Court judgment in *Hayward, supra*, stating at page 146 of 420 F.2d:

" . . . It is fundamental to sound procedure in federal criminal prosecutions that counsel refrain from 'appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only [be] to arouse passion and prejudice.' "

We agree with defendant's contention that he was prejudiced by the inflammatory remarks made by the prosecution in this case. The use of such inflammatory comments by the United States Attorney could only arouse passion and prejudice causing what we feel was reversible error on the part of the trial court in overruling defense counsel's objections.

▬▬▬ Defendant's truck was, at all times, parked outside of the building where the Gun Show was being held. It

was at that one location from 8 a. m. on October 11, 1969, until it was seized about 4:30 p. m. on October 12, 1969. The agents knew where the truck was parked. If they had had any probable cause for search and seizure, they had ample time to obtain a search warrant. They failed to do so.

Of course, it is possible, given the facts and circumstances of this case, that a search warrant would not have been issued. The record before us indicates that the truck did not contain anything that was contraband or violative of the law. The search went far beyond defendant's person and the area from which he might have procured a weapon or an article which could have been used as evidence against him. The Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) said "There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area." [The area of defendant's person and immediate surroundings.] See Preston v. United Sates, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ Insofar as the denial of defendant's motion for the return of the seized property and its suppression as evidence, we feel the District Court committed reversible error considering the Supreme Court's mandates in the aforementioned cases relating to warrantless searches and seizures. The warrantless seizure of the defendant's truck and its contents was constitutionally improper, and suppression of such evidence was necessary for a fair and impartial trial.

Defendant insisted throughout the trial that he had been misinformed by Government agents as to the legal requirements relating to his business. An unprejudiced jury might well believe such testimony.

Because of prejudicial errors such as hereinbefore discussed, we conclude that the judgment of conviction must be re-

versed. We therefore reverse and remand for such further proceedings as may be ordered and which are not inconsistent with this opinion.

Reversed and remanded.