**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Walter TRUTENKO, Defendant-Appellant.**

**No. 73–1606.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1973.

Decided Dec. 28, 1973.

Richard T. Sikes, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Arnold Kanter, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and CUMMINGS and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

The principal question presented is whether a reference to the jurors' pecuniary interests during the prosecutor's closing argument constitutes reversible error. Although the remark was plainly improper, when it is considered "in rela-

tion to all else that happened" during the trial, we are convinced that it could have "had but very slight effect" upon the jury's deliberations. See Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557. We therefore affirm.

Defendant, a doctor, was convicted on 10 counts of a 12-count indictment charging that he caused the mails to be used in connection with a scheme to defraud insurance companies in violation of 18 U.S.C. § 1341. He was accused of overstating the number of visits by accident victims on bills which he rendered to their attorney, knowing that they would be used in the adjustment of the victims' claims. Thus, for example, claimant Raiford testified that he only visited the defendant on four or five occasions, but the doctor's bill reflected 23 visits. The government contended that the doctor misdescribed his services and overstated his charges to enable the victims and their lawyer to obtain inflated settlements.

Shortly after their respective accidents, some of the claimants had given signed statements to an adjuster for the Chicago Transit Authority which referred to the same, or approximately the same, number of visits as did the doctor's bills. At trial those claimants testified to the lesser number of visits. Since the credibility of those witnesses was of critical importance, in his closing argument defense counsel appropriately stressed their original falsifications to the claim adjuster.

In rebuttal, the prosecutor sought to rehabilitate these witnesses and, in doing so, made the improper comment challenged on this appeal. Referring to one of the claimants' statements, he said:

"Of course he has got the man's address right. There is no reason to lie about that. The name of the guy's wife, everything in there is going to be accurate except for the key points, and the client has to go along if he wants the settlement, and these people are only human. If they can get an extra buck out of an insurance company, they are going to do it because they probably had been paying plenty in premiums just as you people have, and the reason you are paying plenty is because the insurance companies are forced to pay out on phony claims, and that is what the majority of these are." Tr. 613.

The last portion of this comment was undeniably improper. The record does not, and properly could not, contain any evidence about the jurors "paying plenty in premiums." More significantly, the comment was an appeal to the pecuniary interest of the jurors, unquestionably an unacceptable predicate for an argument in a criminal trial.[1] Since pecuniary interest would necessarily disqualify a prospective juror from service, it is patently improper to make an appeal to that interest in closing argument. State v. Warford, 106 Mo. 55, 16 S.W. 886, 888 (1891); Narcisco v. Mauch Chunk Tp., 369 Pa. 549, 87 A.2d 233, 235 (1952).

Whenever an error like this occurs, a strong argument for reversal can be made. See Judge Pell's persuasive dissent in Epperson v. United States, 490 F.2d 98 (7th Cir. 1973). Reversal would have the salutary effect of deterring similar prosecutorial misconduct in the future. In each case, however, we must evaluate the importance of error in the context of the entire trial before deciding to reverse.[2] See Kotteakos v.

---

1. In United States v. Medansky, 486 F.2d 807 (7th Cir. 1973), the defendant challenged a closing argument in which the prosecutor said: "Mr. Medansky not only now was cheating everybody who has to pay for automobile insurance, . . . the companies, . . . [and] his clients. . . . Now he was cheating . . . Dr. Becker."

486 F.2d at 815. Whatever improper inferences the jury might have made from this argument, it was not a direct appeal to the pecuniary interest of the jurors. *Medansky*, therefore, does not control the present case.

2. "On the hearing of any appeal . . . in any case, the court shall give judgment

United States, *supra*; *cf.* United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 237–238, 60 S.Ct. 811, 84 L.Ed. 1129. After such consideration, for the following reasons we conclude that reversal is not warranted in this case.

First, notwithstanding defendant's argument to the contrary, our examination of the record leaves us with no doubt as to the sufficiency of the evidence of defendant's guilt. Even though we do not accept Judge Hand's suggestion in United States v. Lotsch, 102 F.2d 35, 37 (2d Cir. 1939), that our judgment on the issue of guilt or innocence should determine whether or not to order a new trial, our appraisal of the evidence is relevant in determining the likelihood that the jury's conclusion may have been affected by the error. On the record before us, we consider that possibility remote.

Second, apart from the improper remark quoted above, the prosecutor's argument was dispassionate and well reasoned. He properly reminded the jury to decide on the basis of the evidence and not to accept statements of counsel, either his own or his opponent's, as evidence. His presentation as a whole—excepting the comment in dispute—was a fair appeal to reason.

Third, the thrust of the objectionable comment was not entirely adverse to the interests of the defendant. Its primary purpose was to persuade the jury that certain witnesses were credible even though they had been parties to the fraud on the insurance companies. Since these witnesses were participants in the very fraud of which defendant was accused, any comment which tended to mitigate their wrong would also tend to mitigate the seriousness of the defendant's misconduct. Conversely, to the extent that the reference to "paying plenty in premiums" prejudiced the defendant, it also impugned the character of the witnesses upon whom the govern-ment was relying. We do not therefore condone the comment; we merely infer that its actual impact was somewhat ambiguous.

Fourth, since the amounts of money involved in defendant's bills were modest, there was a lesser risk of prejudice than in a case like *Epperson*. It would border on the absurd to infer that overstatements of this defendant's bills had any actual effect on insurance premiums. Even though it was, of course, improper to remind them that they pay insurance premiums, it is evident that jurors who have the intelligence to understand the relationship between the payment of claims and their own insurance costs are not likely to predicate their determination of guilt or innocence on an isolated remark of this character. In almost every criminal trial, if the jurors assume that the defendant is guilty as charged, they, as members of society, have a personal stake in his conviction.

Fifth, we consider it significant that experienced and competent trial counsel did not object to the prosecutor's comment. We do not hold that the error was waived because we recognize the tactical considerations that militate against interrupting an adversary's closing argument. We are inclined to believe, however, that if the comment were sufficiently prejudicial to warrant reversal, counsel who was present at the time either would have objected forthwith or else would have requested the trial judge to give a curative instruction. There was opportunity after argument, and before the court instructed the jury, to make such a request. The absence of any such request tends to corroborate our appraisal of the probable impact of the remark as minimal.

Finally, we have carefully reviewed the instructions which the trial judge did give. Read as a whole, they fairly stated the issues and unequivocally reminded the jurors of their obligation to

after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

28 U.S.C. § 2111. This rule is also set forth in Rule 52(a), Fed.R.Crim.P.

perform their duty without prejudice and on the basis of the evidence rather than any statements of counsel.[3] Our familiarity with such routine admonitions does not detract from the real meaning those words convey to inexperienced jurors presumably faithful to their sworn oaths.

After considering all that happened in the trial court, we therefore hold that the prosecutor's comment in this case did not constitute reversible error. We trust, however, that our adverse reaction to an appeal to the pecuniary interest of jurors will be manifest from this opinion read as a whole. The burden of persuading us that any similar appeal in the future was not deliberate prosecutorial misconduct requiring us to exercise our supervisory power will indeed be a heavy one. *Cf.*, United States v. Ott, 489 F.2d 872 (7th Cir.). See also United States v. Fullmer, 457 F.2d 447 (7th Cir. 1972). See also United States v. Signer, 482 F.2d 394 (6th Cir. 1973), cert. denied 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549.

We have considered defendant's other claims of error and find them to be without merit.[4] The judgment is

Affirmed.

SWYGERT, Chief Judge (dissenting).

As the majority recognizes the assistant United States Attorney's remark was improper. And it was so highly prejudicial that I think all the reasons advanced by Judge Stevens for affirmance, while worthy of consideration, do not satisfactorily answer the assertion that the prejudice suffered by the defendant requires a reversal.

The majority's first two arguments are based on the view that in the overall context of the trial and the closing argument this remark was inconsequential. I believe this underestimates the prejudicial impact implicit in such a remark when made by the representative of the Government.

I cannot accept the majority's third argument that the actual impact of the statement was ambiguous since its prejudicial effect also "impugned the character of the witnesses upon whom the government was relying." Although it is arguable that the plea to their pecuniary interest might have caused the jurors to blame the Government witnesses for the high price of their insurance premiums, the defendant and not the witnesses was the one upon whom the jury passed judgment. It is not likely that the jurors would have discredited the witnesses' testimony, since that action could never help to lower their premiums whereas they might believe a guilty verdict could.

As to the majority's fourth argument it is sufficient to note that the prosecu-

---

3. Consider, for example, these excerpts:

   "The Jury's function is to determine the facts. This should be done without prejudice, fear or favor, and solely from a fair consideration of the evidence.

   \*  \*  \*  \*  \*

   "In determining the facts you are reminded that before each of you was accepted and sworn to act as a juror, you were asked questions regarding your competency, qualifications, fairness and freedom from prejudice or sympathy. It was on the faith of those answers that you were accepted by the parties and those answers are binding on each of you now as they were then and they should remain so until you are discharged from consideration of the case.

   \*  \*  \*  \*  \*

   "Statements and arguments of counsel, as I said earlier, are not evidence." Tr. 617–618.

4. Defendant argues that it was error to refer to the fact that the lawyer to whom he submitted his bills had been convicted of fraud. This fact was brought out during the government's direct examination of the lawyer, without objection from defendant, presumably because defense counsel might have inquired about the conviction on cross-examination for impeachment purposes. In any event, the fact was properly before the jury and was not unduly emphasized during argument. Defendant also argues that it was error to refer to the claims as "phony" when they were merely exaggerated, rather than entirely false. Finally, defendant challenges the sufficiency of the evidence, but it was plainly adequate when construed in the manner required by Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

tor's appeal was to the jurors' self-interest rather than their reason.

The fifth reason offered by the majority to support their position is that trial counsel failed to object or request a curative instruction and thus trial counsel too must have felt that the impact of the remark was minimal. The prejudicial effect of this comment was, however, raised in the motion for a new trial. Moreover, the majority has failed, I submit, to fully consider a trial counsel's dilemma when situations such as here arise during final argument. Judge Pell in his dissent in the recent case in this court, Epperson v. United States, 490 F.2d 98 (7th Cir., 1973) graphically articulated the problem:

> Counsel is in a precarious position when improper argument is made. If immediate objection is made, the interruption of the argument may only serve to emphasize the improper comments in the minds of the jury. An objection out of the hearing of the jury, unless it secures a mistrial, is subject to the same difficulty. 490 F. 2d at 101.

Finally the majority maintains that the trial judge sufficiently reminded the jurors of their duty of impartiality in his instructions. In my opinion, these general instructions, remote from the occurrence, did not neutralize the harm. The language of the Supreme Court in Viereck v. United States, 318 U.S. 236, 248, 63 S.Ct. 561, 566, 87 L.Ed. 501 (1943), is apposite:

> At a time when passion and prejudice are heightened by emotions . . . we do not doubt that these remarks addressed to the jury were highly prejudicial, and that they were offensive to the dignity and good order with which all proceedings in court should be conducted. We think the trial judge should have stopped counsel's discourse without waiting for an objection . . . .

This circuit has taken a similar stance. Judge Pell, writing for the court in United States v. Cook, 432 F.2d 1093, 1107 (7th Cir. 1970), stated:

> In some instances, if a prosecuting attorney's remarks were continuously of an inflammatory nature with an appeal to prejudice or similar improper motives, the court might well have the duty sua sponte to correct the situation.

Unlike United States v. Grooms, 454 F.2d 1308 (7th Cir. 1972), the comment in the instant case was not merely an appeal based on the personal belief of the prosecutor, but rather an appeal based on the interest of the jurors as premium payers. On the other hand, the case before us is similar to United States v. Fullmer, 457 F.2d 447 (7th Cir. 1972), in which this court reversed the defendant's conviction because of prejudicial remarks by the prosecutor. In *Fullmer* the remarks were addressed to the juror's fear of riots and snipers whereas the remark in this case was addressed to the juror's discontent with high insurance premiums. In both instances the comments "could only arouse passion and prejudice causing what we feel was reversible error . . ." *Fullmer, supra* at 449.

Recently we have had before us an increasing mumber of appeals involving alleged improper remarks by Government counsel during their summations. Warnings such as we gave in United States v. Grooms, 454 F.2d 1308 (7th Cir. 1972),* seem not to have been heeded. *See* United States v. Tanner, 471 F.2d 128, 136 (7th Cir. 1972). Accordingly, I think firmer and more drastic steps are called for. Moreover, we ought not excuse such conduct because no objection was made. It is a truism that a trial judge should see to it that

---

\* Not only do such comments fail to add anything in any way probative of the real issues confronting the trier of fact, but they also possess the seeds of reversible error in that they tend to amplify the possibility that lay jurors may be misdirected from properly weighing the evidence. . . ." 454 F. 2d at 1312.

every defendant receives a fair trial. The judge is not a spectator at a gladiatorial contest. A prejudicial comment such as occurred here required the judge to rebuke counsel and give a curative instruction—without being prompted by an objection.