UNITED STATES of America,
Plaintiff-Appellee,

v.

William Thomas RAY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

William Thomas RAY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

William Thomas RAY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

David Wayne SCOGGIN,
Defendant-Appellant.

Nos. 82–1262, 82–1301, 82–1470
and 82–1471.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1983.

Decided April 24, 1984.

David Bukey, David Shorett, Seattle, Wash., for defendant-appellant.

Dick Tallman, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Appeals from the United States District Court for the Western District of Washington.

Before GOODWIN, WALLACE and REINHARDT, Circuit Judges.

GOODWIN, Circuit Judge.

William Ray and David Scoggin appeal their convictions for dealing in cocaine. The evidence showed that Ray moved more than 100 pounds of cocaine from Florida to Idaho and Washington and that Scoggin, at the other end of the distribution chain, bought several ounces of cocaine in Idaho. Scoggin was convicted under 21 U.S.C. § 846 of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Ray was convicted of engaging in a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a)(1) and of several counts of interstate travel in aid of the illegal drug enterprise, possession with intent to distribute cocaine, distribution of cocaine, and using a telephone to facilitate a narcotics transaction.

Four appeals are consolidated here. In No. 82–1471 Scoggin contends that the district court impermissibly restricted his cross-examination of a government witness. No. 82–1262 is an interlocutory appeal in which Ray appeals the district court's order restraining his assets. No. 82–1301 is an interlocutory appeal of the district court's order denying his motion to dismiss the superseding indictment as constituting vindictive prosecution. Ray now makes no vindictive prosecution argument, but asserts that this interlocutory appeal deprived the district court of jurisdiction to proceed with the trial. In No. 82–1470, Ray appeals his conviction and sentence.

## I. Scoggin

Andrio Crow's testimony was crucial to proving that Scoggin was part of a conspiracy to possess cocaine with intent to distribute. Crow was arrested along with Scoggin, Ray and others on narcotics charges, but then turned government witness in a plea bargain. Scoggin argued at trial that he, Scoggin, purchased cocaine for personal use, not resale. Crow testified that Scoggin had purchased large amounts of cocaine, which would indicate an intent to resell the drug rather than consume it personally, and that he and Scoggin had travelled together to Florida to purchase cocaine for resale.

Without Crow's testimony, the government could show only that Scoggin made telephone calls to the other defendants, that his telephone number was listed in the personal telephone books of some defendants, and that Scoggin occasionally bought one-half and one-quarter ounce packets of cocaine. Because the district court instructed the jury that merely purchasing cocaine cannot constitute conspiracy to possess with intent to distribute, Crow's testimony was essential to proof of the charge against Scoggin.

Scoggin claimed that Crow, after entering into his plea agreement but before trial,

had continued to traffic in cocaine. Specifically, Scoggin alleged that Crow had travelled to Florida twice under a false name, presumably to purchase drugs, and that Crow had offered to sell Scoggin two ounces of cocaine. Relying on Fed.R.Evid. 608(b), the trial court refused to allow Scoggin to cross-examine Crow on this matter.[1]

■ When the case against a defendant turns on the credibility of a witness, the defendant has broad cross-examination rights. *See, e.g., United States v. Uramoto,* 638 F.2d 84, 86 (9th Cir.1980), *United States v. Alvarez-Lopez,* 559 F.2d 1155 (9th Cir.1977). The district court abused its discretion in refusing to permit Scoggin to cross-examine Crow on his alleged postplea drug activities, because a jury could believe that Scoggin's allegations of Crow's continuing drug dealing might have biased Crow's testimony against Scoggin.

■ Rule 608(b) does not bar introduction of evidence to show that the witness is biased. It regulates only the admissibility of evidence offered to prove the truthful or untruthful character of a witness. *United States v. James,* 609 F.2d 36, 46 (2d Cir. 1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); *United States v. Rios Ruiz,* 579 F.2d 670, 673 (1st Cir. 1978); *accord United States v. Brown,* 547 F.2d 438, 445–446 (8th Cir.), *cert. denied,* 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977). The reach of Rule 608 is suggested by the Advisory Committee's notes to Rule 608(a), which state that evidence of bias or interest does not constitute an attack on a witness' character for truthfulness.

In this case, Crow's possible bias deserved jury scrutiny because his testimony was crucial to proving that Scoggin had bought drugs in quantities sufficient to support the inference that he intended to distribute them. It would have been extremely easy for a biased witness to shade his testimony and increase the amount of cocaine Scoggin bought from an amount suitable for personal consumption to one suitable for distribution.

The government argues that if we permit Scoggin to cross-examine Crow on his continued drug dealing to show bias, any defendant will be able to bootstrap otherwise inadmissible evidence into court by simply reporting witness misconduct to the authorities, and then seeking to cross-examine the witness on that subject at trial. This is a legitimate concern, but trial courts can require the defendant to offer a threshold level of evidence to show that the defendant's allegations of witness misconduct have some grounding in reality. If the facts are material, the defendant has a right to present them to the jury. Scoggin met this threshold requirement by producing a Lewiston to Boise airline ticket for Crow, arguing that the flight was the first leg of a trip to Florida and thus tended to corroborate his allegation that Crow had gone to Florida to buy cocaine.

■ Having concluded that the district court should have permitted the cross-examination of Crow, we now determine whether its failure to do so was reversible error. Rule 608(b) commits the extent of impeachment by cross-examination to the trial court's discretion. In exercising its discretion, the trial court balances the probative value of cross-examination against the dangers of confusion, prejudice, or waste of time. *United States v. Lustig,* 555 F.2d 737, 748–749 (9th Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978). The test of whether the trial court abused its discretion in refusing to allow cross-examination for impeaching a witness is "whether the jury had sufficient information to appraise the

---

1. Fed.Rule Evid. 608(b) states:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified....

bias and motives of the witness." *Skinner v. Cardwell*, 564 F.2d 1381, 1389 (9th Cir. 1977), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978).

The district court's refusal to permit cross-examination of Crow on his alleged post-plea drug activities deprived the jury of important information on Crow's possible bias. It thereby committed an abuse of discretion. We reverse Scoggin's conviction and remand for a new trial.

## II. Ray

### A. Restraining Order

Title 21 U.S.C. § 848(a)(2) provides that a person convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a)(1) shall forfeit to the United States profits obtained from the enterprise, and any interest in property or contractual rights affording a source of influence over the enterprise. The district courts are empowered to enter appropriate restraining orders covering property or other interests subject to such forfeiture. 21 U.S.C. § 848(d).

In February 1982 the district court granted an ex parte order restraining Ray, his wife, and Task, Inc., a corporation controlled by Ray, from disposing of their property, excepting expenditures for the necessities of life for Ray and his wife.[2] The district court denied Ray's motion to modify the restraining order to allow use of some of his funds to pay for his defense. In April 1982 the district court denied Ray's alternative motions for reconsideration and for a hearing on the appropriate-

ness of the restraining order. Ray now argues that the denial of a hearing violated his Fifth Amendment right to due process, and that the restraining order interfered with his Sixth Amendment right to counsel. We address these in turn.

### 1. Right to Counsel

Ray claims that freezing his assets violated his Sixth and Eighth Amendment rights to prepare adequately for trial. There are two aspects to Ray's right to counsel claim. First, he alleges that the restraining order prevented him from hiring more experienced counsel. Second, he claims that the restraint prevented his counsel from conducting a financial analysis necessary to counter the government's case.

■ Apart from his implicit claim that the rich can afford better lawyers than the poor, Ray essentially contends in his first claim that he was denied the right to retain counsel. This court has recognized that individuals who can afford to retain counsel have a qualified right to obtain counsel of their choice. *Releford v. United States*, 288 F.2d 298, 301 (9th Cir.1961).[3] Other circuits are in accord. *See, e.g., United States v. Burton*, 584 F.2d 485 (D.C.Cir. 1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *Gandy v. Alabama*, 569 F.2d 1318 (5th Cir.1978); *United States v. Inman*, 483 F.2d 738 (4th Cir. 1973), *cert. denied*, 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974). Denial of this qualified right is reversible error regardless of whether prejudice is shown. *Releford*, 288 F.2d at 301.

---

**2.** The jury verdict eventually forfeited to the United States five pieces of Florida real estate, two cars, and money seized at the time of Ray's arrest.

**3.** *Kelly v. Springett*, 527 F.2d 1090 (9th Cir. 1975), is inapposite to Ray's case. State agents seized cash and a bank passbook from Kelly at the time of his arrest. The California Franchise Tax Board then levied a jeopardy assessment against Kelly's account for unpaid taxes. After Kelly was convicted on state charges, he brought suit under 42 U.S.C. § 1983 alleging that seizure of his funds had precluded him from retaining private counsel of his choice in

the criminal proceeding. On appeal, this court rejected Kelly's claim, saying that the right to retain counsel "must be qualified in at least two important respects. Either the accused must have been denied effective assistance of appointed counsel [citation omitted], or he must have been entirely unrepresented by counsel [citation omitted]." *Id.* at 1093. This statement can be read as applying only to situations where a criminal defendant subsequently seeks damages in a § 1983 action for denial of the opportunity to retain counsel. Moreover, the statement was not essential to the court's holding that 28 U.S.C. § 1341 barred Kelly's suit.

■ However, we need not decide whether a § 848(d) restraining order that prevents a person who could otherwise afford to do so from retaining counsel violates this qualified right to retain counsel, because Ray was represented by the counsel of his choice. In his motion for modification of the restraining order, Ray admitted that he had told Wayne, his lawyer, that he wanted Wayne to represent him. When it became apparent that Ray could not pay Wayne's fee because of the restraining order, the district court appointed Wayne to represent Ray under the Criminal Justice Act of 1964, as amended. 18 U.S.C. § 3006A. In the district court Ray did not repudiate Wayne as his chosen counsel. Rather, he contended that the restraining order should be lifted because Wayne might wish to associate more experienced counsel, and because the restraining order would prevent Ray from hiring new counsel should he become dissatisfied with Wayne. Ray has not shown that the restraining order actually restricted his ability to retain counsel of his choice.

Ray also contends that the restraining order prevented him from conducting a net worth analysis to counter the government's argument that his increased wealth came from drug sales. In essence, Ray contends in this second argument that the restraining order denied him effective assistance of counsel because it prevented his counsel from preparing adequately for trial. Even assuming that lack of the net worth analysis prevented adequate preparation, Ray is not entitled to relief because he has not made the required showing of prejudice. *Ewing v. Williams*, 596 F.2d 391 (9th Cir. 1979). The government made only two passing references in the course of a lengthy closing argument to Ray's apparent lack of a legitimate source of income. Ray's lack of detailed financial information with which to counter these limited references did not prejudice his defense.

2. Due Process

■ Due process requires a district court to hold a hearing to determine the propriety of a restraining order under 21 U.S.C. § 848(d) immediately after its issuance. *United States v. Crozier*, 674 F.2d 1293 (9th Cir.1982), *petition for cert. filed*, 51 U.S.L.W. 3394 (Nov. 15, 1982). The district court's failure to hold a hearing on the propriety of the restraining order thus temporarily deprived Ray of his property without due process of law. The question is how this due process violation should be remedied.

*Crozier* had no occasion to address a post-trial remedy for denial of a hearing. *Crozier* was an interlocutory appeal, decided before the district court entered final judgment. Consequently, the *Crozier* court could easily remedy the lack of a hearing by simply remanding the case with instructions to hold a hearing. In this case, the damage to Ray, if any, has been done. After he was denied a hearing on the restraining order, he was convicted and his property declared forfeited.

■ Reversing Ray's criminal conviction, if otherwise free from error, is not an appropriate remedy for the district court's failure to grant Ray a hearing on the restraining order. The lack of a hearing did not in any material way affect Ray's preparation of his legal defense and therefore violated only Ray's property rights. Accordingly, it had nothing to do with the determination of his guilt or innocence. An attack on the conviction is an attack on the wrong target.

*Crozier* was decided just two days before the district court denied Ray's motion for a hearing on the restraining order, and apparently was not cited to the district court. We doubt that the question of an appropriate remedy for violation of *Crozier's* hearing requirement will arise again, for we fully expect that the district courts of this circuit will heed *Crozier's* teaching and hearings will be allowed.

B. Degree of Control Required by § 848

Ray asserts that jury instruction 10 understated the degree of control which Ray must have had over a continuing criminal enterprise to support a conviction under 21

U.S.C. § 848. Specifically, he objects that the instruction failed to state that he must have acted in concert with five or more confederates at the same time and that he must be found able to have controlled their actions.[4]

The statute requires that the defendant act "in concert with five or more other persons with respect to whom [defendant] occupies a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(b)(2)(A).

■ The contention that § 848 requires proof that the organizer of a continuing criminal enterprise acted in concert with five or more persons at the same time was rejected by this court in *United States v. Smith*, 690 F.2d 748 (9th Cir.1982), *cert. denied*, — U.S. ——, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983). We have not previously ruled on Ray's contention that the quoted provision requires proof that the organizer had the ability to control the actions of his subordinates. However, *United States v. Valenzuela*, 596 F.2d 1361 (9th Cir.), *cert. denied*, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979), points the way to resolution of this issue. In *Valenzuela*, this court upheld the "organizer, a supervisory position, or any other position of management" language against a vagueness attack by noting that those words "enjoy a wide currency in the business community and are commonly understood by members of the general public." 596 F.2d at 1367. In accord with *Valenzuela*, these words should be given their ordinary meaning.

The Second Circuit has reached the same conclusion on this point. *United States v. Mannino*, 635 F.2d 110, 117 (1980). Since the continuing criminal enterprises subject to § 848 often take place in more than one appellate circuit, as did Ray's enterprise, we are especially reluctant to create an unnecessary intercircuit conflict by disagreeing with the Second Circuit.

■ The ordinary meaning of the word "organizer" does not carry with it the implication that the organizer is necessarily able to control those whom he or she organizes. Ray's conduct was sufficient to hold him an "organizer" within the meaning of § 848.

## C. Overdose Testimony

■ Ray alleges the trial court abused its discretion in admitting evidence of witness Betty Epps' overdose. Ray's reliance on *United States v. Green*, 548 F.2d 1261 (6th Cir.1977), and *United States v. Anderson*, 584 F.2d 849 (6th Cir.1978), for the proposition that overdose testimony is inadmissible is misplaced. Those cases dealt with abstract testimony on drug effects in the absence of a specific overdose relevant to the facts of the case. Here, witness Epps' overdose was the event which precipitated the arrests which collapsed Ray's distribution chain. It was specifically relevant to a charged crime. "Relevant evidence is not rendered inadmissible merely because it is prejudicial." *United States v. Booth*, 669 F.2d 1231, 1240 (9th Cir.1981). The district court

---

**4.** The court instructed the jury:

"The offense charged in Count I requires proof that William T. Ray violated a federal felony drug law and that the violation was part of a series of such violations undertaken by him in concert with five or more persons whom he organized, supervised or managed. *The government need not show that all five of the other persons operated in concert at the same time, or that the defendant had personal contact with all of them. All that the evidence must show is that the defendant organized or supervised or managed at least five other persons....*" (Emphasis added).

Ray requested this instruction:

"The offense charged in Count I requires proof that William T. Ray violated a federal

felony drug law and that the violation was part of a series of such violations undertaken by him in concert with 5 or more persons whom he organized, supervised or managed. To convict William T. Ray of this offense you must find that the 5 or more individuals were involved in the continuing series of violations. It is not sufficient that they were involved in only one offense or in an isolated offense that was not part of an ongoing enterprise.

*To find that 5 or more individuals were organized, supervised or managed by Ray you must find that Ray had the power and ability to control their actions in the ongoing enterprise. It is not enough to find that Ray merely supplied drugs to others who ran their own illegal drug distribution organizations.*" (Emphasis added)

properly weighed the prejudicial and probative effects of the testimony. There was no abuse of discretion.

## D. Multiplicitous Counts

Ray alleges that counts 5 and 6, 8 and 9, and 27 and 28 are multiplicitous because three of these counts charge conspiracy to possess cocaine with intent to distribute and three charge distribution of the same cocaine. In *United States v. Oropeza,* 564 F.2d 316, 323–324 (9th Cir. 1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978), this court found that Congress intended the possession with intent to distribute provision to punish those who intended but failed to distribute. In consequence, it held that under 21 U.S.C. § 841(a)(1), distribution and possession with intent to distribute merge when the possession is a step toward accomplished distribution. *Id.*

Accordingly, we vacate the convictions for counts 5 and 8. We do not vacate the conviction for count 27 or 28 because those counts are not multiplicitous. Count 27 alleges distribution of cocaine on December 7, 1981; Count 28 alleges possession on December 8, 1981 of cocaine with intent to distribute. The cocaine at issue in count 28 cannot be the same cocaine that is at issue in count 27, since the count 27 cocaine had already been distributed by December 8.

Because the sentences for counts 5 and 8 run concurrently with sentences for several other counts, and because nothing in the record suggests that counts 5 and 8 enhanced the sentences on the other counts, there is no need to remand for resentencing.

## E. Improper Closing Argument

Ray asserts that the district court abused its discretion in denying his motions for a mistrial on grounds of improper remarks in the government's closing arguments. *United States v. Kirkland,* 637

F.2d 654, 656 (9th Cir.1980). Ray identifies three types of improper subjects of comment: (1) that the defendants were outsiders bringing cocaine into the Pacific Northwest; (2) the overdose of government witness Epps and the corrosive nature of the drug trade; and (3) the purposes of 21 U.S.C. § 848.

Although sanctimony and xenophobia are not to be encouraged, the government's peripheral remarks about outsiders and the drug trade were insufficiently persistent and pronounced to warrant reversal. Often the government was addressing defense counsel's intemperate remarks. In the context of a three-week trial, a fourteen volume record, and two hundred pages of closing argument transcript, the remarks at issue are not of great significance.

The government's remarks about the statutory purposes of 21 U.S.C. § 848 present a larger problem. Ray urges that a prosecutor's reiteration of the Congressional purpose behind federal criminal statutes requires reversal, citing *United States v. Fullmer,* 457 F.2d 447 (7th Cir.1972); *United States v. Leon,* 534 F.2d 667 (6th Cir.1976). However, the government attorneys' comments at closing argument in this case are different from those found to warrant reversal in *Fullmer* and *Leon.*

In *Fullmer,* the court reversed a licensed gun dealer's conviction when the prosecutor commented on Congressional concern about "using ammunition and guns for sniping and creating disturbances, and so forth." *Fullmer,* 457 F.2d at 449. The government's remarks in *Fullmer* did not strongly relate to the defendant's conduct. It is a large leap from selling guns to sniper attacks. Here, the Assistant United States Attorney's statement of the Congressional intent behind § 848 directly addressed Ray's conduct.[5]

In *Leon,* the prosecutor continued to comment extensively on the purposes of

---

5. The Assistant United States Attorney stated: "The purpose of the statute [21 U.S.C. § 848] is to smash these rings once and for all, jail the principals, destroy the economic base, and that drug ring will never again distribute one gram of cocaine in this district."

the federal statute at issue even after the trial court had sustained an objection. *Leon,* 534 F.2d at 679–681. Here, the Assistant United States Attorney's comments on the statute's purpose were relatively isolated and not an integral part of the prosecution's strategy. As incidental remarks in a long trial, they do not require reversal.

**F. Interlocutory Appeals and Jurisdiction**

Ray asserts that the pendency of his interlocutory appeal, No. 82–1301, in which he alleged that the second superseding indictment constituted vindictive prosecution, deprived the district court of jurisdiction to try his case.

The Supreme Court has recently held that the issue of vindictive prosecution cannot be raised on interlocutory appeal. *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982). Because this court could not gain jurisdiction in interlocutory appeal No. 82–1301, that appeal did not divest the district court of jurisdiction.

Interlocutory appeal No. 82–1262, in which Ray appeals the denial of his motion to modify the district court's restraining order freezing his assets, also did not oust the district court's jurisdiction. *United States v. Crozier,* 674 F.2d 1293, 1297 (9th Cir.1982) (district court may retain jurisdiction during interlocutory appeal and proceed with criminal trial).

Ray's interlocutory appeals merely underscore the government's argument that Ray suffered no want of industry on the part of his appointed counsel.

**III. Conclusion**

Scoggin's conviction is reversed and his case is remanded for a new trial. Ray's convictions for counts 5 and 8 are vacated; the remaining convictions are affirmed.

REINHARDT, Circuit Judge, concurring:

I concur fully in the majority opinion. I agree with its conclusion that Ray suffered no prejudice from the freezing of his assets since he was represented at his trial by counsel of his choice, and he has identified no actual prejudice resulting from counsel's appointment or the unavailability of his funds. I would, however, point out explicitly that we do not consider the question whether the appointment of Ray's private counsel to represent him on a cut-rate basis was made in conformity with the provisions of 18 U.S.C. § 3006A or was otherwise within the court's discretion.