UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert D'AMORE, Defendant–Appellant.

No. 94–10091.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided June 12, 1995.

Jamon A. Jarvis, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Robert D'Amore appeals the district court's denial of his request to substitute private counsel of his choosing for his court-appointed lawyer at his probation revocation hearing. We reverse and remand for a new hearing.[1]

## I

In September, 1993, the Government filed a Petition on Probation and Supervised Release seeking revocation of the defendant's probation. The petition alleged that D'Amore had violated state law by obtaining money under false pretenses and had failed to follow a counseling program for a gambling addiction. A private attorney, Douglas Crawford, was appointed to represent D'Amore. The Government amended the petition to add further allegations on November 23, 1993. A bench warrant was then issued and D'Amore was detained pending his probation revocation hearing. At the stipulation of the parties, the hearing was then rescheduled for January 14, 1994, but that date was later changed by the court to January 28.

The day before the hearing, January 27, Crawford filed a motion requesting leave to withdraw as counsel to permit D'Amore to substitute retained counsel of his choosing. The court issued no formal ruling on the motion on January 27 and did not continue the revocation hearing in order to permit time to consider the motion. Thus, the motion was still pending on the morning of January 28, when the parties gathered for the scheduled revocation hearing. Before the hearing on the revocation began, the court permitted D'Amore to make a state-

John C. Lambrose, Chief Asst. Federal Public Defender, and Janet S. Bessemer, Asst. Federal Public Defender, Las Vegas, NV, for defendant-appellant.

---

**1.** The defendant also brings an ineffective assistance of counsel claim, which we need not address.

ment. He reminded the court that a motion for substitution of counsel had been made the day before and complained about Crawford's representation. In particular, he was upset that Crawford had not sufficiently explored plea bargaining possibilities, had not spent adequate time preparing for the case, and could not be reached for the last three weeks because he was vacationing in Europe. D'Amore told the court that his family had retained substitute counsel, Carmine Colucci, who had been given the case file, but who had not yet had a chance to prepare with D'Amore for the revocation hearing. He promised to prepare with new counsel expeditiously and further stated that he believed he could reach a plea agreement and avoid the need for a hearing with the help of new counsel.

At this point, the court stated:

> You can—you can admit to the violations, and I would have to think you've been advised of that. It isn't—and it happens with regularity. But I'm not going to countenance this kind of delay. This has been pending for a very long time, and I see all kinds of evidence of efforts being made to avoid and delay responsibility. We will go ahead today. I advised Mr. Crawford of that yesterday. I have not heard from any other counsel, as far as I know. And we will proceed.

After the hearing, the district court found that the defendant had violated his probation and sentenced him to five years incarceration.

## II

The district court's denial of the motion to substitute counsel is reviewed for abuse of discretion. *United States v. Castro,* 972 F.2d 1107, 1109 (9th Cir.1992). That discretion must be exercised, however, within the limitations of the Sixth Amendment, which grants criminal defendants a qualified constitutional right to hire counsel of their choice. *United States v. Ray,* 731 F.2d 1361, 1365 (9th Cir.1984). This right is qualified in that it may be abridged to serve some "compelling purpose." *United States v. Lillie,* 989 F.2d 1054, 1055–56 (9th Cir.1993). Such a compelling purpose may be found when granting the motion would lead to a delay in the proceedings and the Government's interest in the prompt and efficient administration of justice outweighs the defendant's need for new counsel to adequately defend himself.[2] *See id.; United States v. Kelm,* 827 F.2d 1319, 1322 (9th Cir.1987). Absent such a compelling purpose, however, it is a violation of the Sixth Amendment to deny a motion to substitute counsel and an error that must be reversed, regardless of whether prejudice results. *United States v. Washington,* 797 F.2d 1461, 1467 (9th Cir.1986); *Ray,* 731 F.2d at 1365. Thus, "the defendant can't be denied his choice of retained counsel just because the request comes late, or the court thinks current counsel is doing an adequate job." *Lillie,* 989 F.2d at 1056. Instead, when granting the motion would require a continuance,[3] the court must weigh the defendant's Sixth Amendment interest against any delay or inconvenience caused by the request for substitution, even when the request is made at the last minute. *See id.; Kelm,* 827 F.2d at 1322.

In reviewing the district court's denial of a late motion to substitute private for appointed counsel, we focus on three considerations:

(1) the adequacy of the district court's inquiry;

(2) the extent of the conflict between the defendant and counsel;

---

2. There may be other compelling purposes as well. For instance, a court may override the defendant's choice of counsel in order to maintain the integrity of the judicial system by prohibiting representations that involve a conflict of interest, *see Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988), or an ethically unfit lawyer. *See Lillie,* 989 F.2d at 1056.

3. A different analysis is called for when the substitution does not threaten any delay in the proceedings. In such cases, "there is no reason to deny substitution whether or not the defendant has complaints against, or an irrevocable conflict with, his appointed counsel." *United States v. Torres–Rodriguez,* 930 F.2d 1375, 1380 n. 2 (9th Cir.1991).

(3) the timeliness of the motion and extent of any inconvenience or delay that would result from granting the motion.

See *Lillie*, 989 F.2d at 1056; *Castro*, 972 F.2d at 1109; *United States v. Walker*, 915 F.2d 480, 482–83 (9th Cir.1990); *Kelm*, 827 F.2d at 1322 & n. 2.

## A

### Adequacy of Inquiry

■ Before the district court can engage in a measured exercise of discretion, it must conduct an inquiry adequate to create a "sufficient basis for reaching an informed decision." *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir.1986). In this case, the district court's inquiry into the merits of defendant's motion was unsatisfactory.

It appears that the district court had reached a tentative conclusion about the defendant's motion for substitution prior to the January 28 hearing. At that hearing, the judge stated that it would proceed as scheduled and that the court had "advised Mr. Crawford of that yesterday." The only plausible reading of this statement is that the court had at least tentatively made its decision before it held the hearing on the motion. At any rate, the proceedings in court on January 28 were exceedingly abbreviated. None of the attorneys spoke regarding the motion. Crawford made no argument, factual or legal. The court conducted no inquiry of the defendant or his lawyer regarding the conflict between them or the length of the necessary delay. Instead, D'Amore was merely given a chance to speak, after which the court reiterated what it had told Crawford the day before—the case would proceed as scheduled.

The procedure resulted in an inquiry that was clearly inadequate. While "[w]e recognize that the nature of our review requires that we accord the district court sufficient latitude to conduct the proper inquiry under the circumstances of each case," *Walker*, 915 F.2d at 483, the procedure used here deprived this court of a record for review and the defendant of an opportunity to obtain a full exploration of his concerns about his appointed counsel's performance. *See Torres–Rodriguez*, 930 F.2d at 1381.

Moreover, regardless of the district court's views, tentative or otherwise, which developed before the defendant spoke at the January 28 hearing, we find that the inquiry conducted that morning was inadequate. First, the court did not inquire into how long a continuance the defendant's new counsel would need to prepare for the case.[4] *See Lillie*, 989 F.2d at 1056; *Torres–Rodriguez*, 930 F.2d at 1381. Second, the court did not attempt to gauge how much inconvenience would be caused by a delay in the proceedings. *See Torres–Rodriguez*, 930 F.2d at 1381. While it was obvious that there would be some inconvenience for the lawyers and witnesses, the court did not attempt to determine how much inconvenience would be caused by a delay.[5] Third, the court did not inquire of Crawford or the defendant about the degree to which the animosity and lack of communication between them had prevented adequate preparation for the hearing. *See id.* Finally, the court did not ask why the motion had not been made earlier or discuss when or whether it had received the defendant's letter asking to replace Crawford. *See Kelm*, 827 F.2d at 1322 n. 2.

All these inquiries were important to the district court decision that a compelling purpose would be served by denying the defendant his qualified constitutional right to hire counsel of his choice.

## B

### Extent of Conflict with Counsel

■ Although the district court did not inquire into the extent of the conflict between

---

4. The court did mention that it had not heard from any other counsel. However, Crawford had testified in his affidavit that Attorney Colucci had been retained. If the court questioned the veracity of this sworn statement, it was the court's duty to make an adequate inquiry into whether alternate counsel was really available.

5. *After* the court announced its ruling, the Government did note that it had witnesses from out of town present for the hearing.

D'Amore and Crawford, the uncontroverted evidence from Crawford's affidavit and D'Amore's statements to the court reveals a significant conflict and breakdown of communications that substantially interfered with the representation.

In his affidavit in support of the motion to substitute counsel, Crawford testified that D'Amore "will not cooperate with your affiant or any other attorney from your affiant's office in preparation for the forthcoming hearing resulting in your affiant's inability to represent Defendant D'AMORE in this matter." This sworn statement was not controverted by the Government and was well-supported by D'Amore's own statements.

D'Amore told the court that he had spent about half an hour with his attorney preparing for the case, and only five minutes during the two months after the petition had been amended to add several additional counts. Even more upsetting to D'Amore was Crawford's failure to adequately pursue plea bargaining negotiations. He had some money he wanted to offer as restitution to the victims as part of a plea bargain. D'Amore stated, however, that Crawford never undertook to negotiate such a plea arrangement. He further stated that Crawford had failed to contact any witnesses. Finally, D'Amore complained that for the three weeks prior to the hearing, Crawford had been vacationing in Europe and did not communicate with D'Amore at all. Frustrated by Crawford's performance and inaccessibility, D'Amore apparently refused to speak to him from that point onward.

■ While the Government did not contest any of these facts before the district court, it argues to this court that the conflict could not have been as severe as Crawford's affidavit and D'Amore's statements indicate because Crawford did an adequate job of representing D'Amore at the hearing. This sort of ex post argument must be rejected. First, we review the district court's decision based on the evidence before the court at the time it made its ruling. At the time the district court denied D'Amore's motion, the evidence showed a complete breakdown of communication that posed a substantial danger of preventing the adequate representation of D'Amore. Second, we have held that

a court may not deny a substitution motion simply because the court thinks current counsel's representation is adequate. *Lillie,* 989 F.2d at 1056. It follows that we should not affirm a denial of a motion to substitute counsel simply because we believe that the original counsel's performance was adequate. Finally, accepting the Government's argument would effectively require the defendant to show prejudice resulting from the denial, when our cases are clear that prejudice need not be shown. *See Washington,* 797 F.2d at 1467; *Ray,* 731 F.2d at 1365.

Thus, all the evidence before the court showed a complete breakdown of communications which substantially interfered with the presentation of an adequate defense. *See Walker,* 915 F.2d at 483–84.

### C

### Timeliness of Motion

■ The Government argues that the district court's decision to deny the defendant's request was nonetheless reasonable in light of the fact that it was made on the eve of the hearing. *See United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986). However, even when the motion is made on the day of trial, the court must make a balancing determination, carefully weighing the resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice. *Lillie,* 989 F.2d at 1056; *Torres–Rodriguez,* 930 F.2d at 1380.

Our ability to evaluate the timeliness of the motion is severely hampered by the inadequacy of the court's inquiry. However, based on the evidence that is in the record, we cannot conclude that the lateness of the motion justified its denial.

While it is true that the defendant's official motion was made the day before the hearing, this was not the first time the defendant attempted to have Crawford replaced. D'Amore stated that he mailed a letter detailing his conflict with Crawford to the court on January 18—ten days before the hearing—although the jail officials did not mail it until the 25th. In *Walker,* the defendant attempted to contact the court by mail in order to request a substitution of counsel.

915 F.2d at 482. However, the court did not read the letter or address the request until the day of the trial. On appeal, we consider this attempted communication as a mitigating factor in the timeliness inquiry. *Id.* at 482–83, 485.

The question remains, however, why Crawford did not make the motion officially until the day before the hearing. We simply do not know because the court never asked and Crawford never spoke at the hearing. However, Crawford's affidavit and D'Amore's statements give some indication. Crawford was out of the country and not in contact with D'Amore from January 4 through January 24. He talked to D'Amore for the first time that month only two days before the hearing. During Crawford's absence, D'Amore had come to believe that Crawford was not keeping promises and not making an adequate effort in the case. Thus, it appears that D'Amore was unable to ask Crawford to file a timely motion because Crawford was not in contact with his client. It would be a miscarriage of justice to deny a motion to remove Crawford on the ground that Crawford's unavailability had led to an untimely filing of the motion for substitution when, in large part, it was his unavailability that led to D'Amore's decision to remove him in the first place.

Perhaps because it did not conduct any inquiry into the cause of the delay in filing the motion, the district court seems to have concluded that the late motion was simply a delaying tactic, stating the case had been "pending for a very long time, and I see all kinds of evidence of efforts being made to avoid and delay responsibility." This observation is not supported by the record. Of the four continuances which had been granted previously, the first was granted pursuant to a stipulation, with both parties agreeing that time was needed to wade through discovery and to pursue a negotiated settlement. The court granted the continuance and rescheduled the hearing for November 22. Three days later, without explanation, the court rescheduled the hearing again for December 10. In late November, the Government filed additional charges against D'Amore. In response, the parties stipulated to a second continuance until January 14. Finally, this date was pushed back to January 28, without any record of a written motion.[6] Thus, the record provides no support for the claim that D'Amore was engaging in dilatory tactics to "avoid responsibility."

Finally, because we do not know how long D'Amore's new counsel would have required to prepare for the hearing and what inconvenience this would have caused for the witnesses or the court, we cannot say that the consequences of delay justified denial of the motion.

### Conclusion

The district court failed to conduct an adequate inquiry. The record fails to show any "compelling purpose" that was served by depriving the defendant of retained counsel of his choice. Accordingly, we hold that the district court abused its discretion in denying the motion.

The Denial of the Motion to Substitute Counsel is REVERSED, the Order of Revocation of Probation is VACATED and the case REMANDED for proceedings consistent with this opinion.

---

**6.** However, had it not been pushed back, the hearing would have conflicted with Crawford's vacation.