**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Drago Carl MUSA, Defendant–Appellant.**

No. 99–50183.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 2, 2000

Filed July 24, 2000

Cara DeVito, Berley & DeVito, West Hills, California, for the defendant-appellant.

Mark A. Young, Assistant United States Attorney, Criminal Division, Los Angeles, California, for the plaintiff-appellee.

Before: THOMPSON, FLETCHER and FISHER, Circuit Judges.

FISHER, Circuit Judge:

While on supervised release following convictions on three counts of bank fraud, appellant Drago Carl Musa ("Musa") was convicted of misdemeanor witness intimidation in violation of California Penal Code § 136.1(b)(1). Based on that conviction, the United States Probation Office ("USPO") sought to revoke Musa's supervised release. At the outset of the revocation hearing, Musa made a request for substitute counsel. The district court denied the request without inquiry. Then, after finding Musa to be a "danger to the community," the district court sentenced Musa to the statutory maximum three-year prison term, exceeding the three– to nine-month range listed in § 7B1.4 (policy statement) of the sentencing guidelines and suggested by the USPO. Musa does not contest the revocation of his supervised release, but he appeals the length of the sentence imposed, the district court's alleged failure to state the reasons for departing from the guideline range and the district court's denial of his request for substitute counsel. We have jurisdiction

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

We hold that the district court did not abuse its discretion by imposing the three-year sentence and stated a legitimate reason for departing from the range listed in the Sentencing Commission's non-binding policy statement. We hold, however, that the court abused its discretion in not inquiring into Musa's reasons for seeking substitute counsel. Accordingly, we vacate the sentence and remand to the district court for a hearing on the nature of the conflict between Musa and his attorney.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 1998, Musa began a period of supervised release following incarceration for Class B felony convictions on three counts of bank fraud. On December 9, 1998, the USPO filed a letter with the district court requesting the issuance of a bench warrant, and alleging that, on December 2, 1998, Musa was convicted of misdemeanor witness intimidation, which constituted a violation of the conditions of his supervised release.

### A. The Witness Intimidation Charge

The victim, Ms. Hummer, a 79-year-old widow, gave Musa permission to take her car to get an oil change. According to Musa, he had a relationship with Ms. Hummer, and the car was registered (by Musa) in both their names. According to the USPO, Ms. Hummer called the police after Musa failed to return the car. Musa called Ms. Hummer while the police were still at her house investigating the call. The police advised Musa that he was in possession of a vehicle that did not belong to him and that the victim was requesting that he return the vehicle. Musa refused to bring the vehicle back and told the officer that he was going to call his attorney.

The next day, Ms. Hummer reported to the police that Musa had called her three times. During these calls, Musa told her that he wanted her to drop the stolen vehicle charge against him. When Ms. Hummer refused, Musa became angry and stated, "I am going to die, and you are going to die too." Musa then claimed he was going to put Ms. Hummer in a vehicle with him and drive over a cliff. According to the USPO, Ms. Hummer feared that Musa would carry out the threats, and she feared for her life. In addition, Ms. Hummer subsequently obtained a restraining order against Musa.

Musa offers a different version of the underlying events. He portrays the whole situation as a misunderstanding and denies ever threatening to kill Ms. Hummer. Nonetheless, he eventually pled "no contest" to misdemeanor witness intimidation and was sentenced to time served. The USPO's final letter to the court noted Musa's belief that he was forced to accept a no contest plea to the witness intimidation charge: "He reported that he was in a life threatening situation while in custody [pending the resolution of the charge] and he had to plead guilty in order to get out of jail." The USPO candidly reported that Musa "strongly feels that he has been falsely accused."

The USPO advised the district court that Musa has a history of major depression, for which he takes medication. It also noted that Musa had two prior arrests involving violent acts, but that those arrests did not lead to convictions. The USPO concluded that, "[g]iven Mr. Musa's unstable mental state and his apparent propensity to make rash decisions, it is felt that he poses a threat to the community." In its final letter to the court, the USPO cited the restraining order obtained by Ms. Hummer against Musa to support its belief that Musa also continued to pose "a significant threat to the victim."

### B. The Supervised Release Revocation Hearing

At the beginning of the revocation hearing, Musa's court-appointed public defender notified the court of Musa's intention to request substitute counsel for the hearing.

Without inquiring into Musa's reasons for the request, the court rejected it and directed the government to begin presenting its case.

The government's case consisted of a certified public record of Musa's witness intimidation conviction. In opposition, Musa's counsel characterized the underlying conviction as "the result of an unfortunate misunderstanding between Mr. Musa and the alleged victim." The court then gave Musa an opportunity to explain his side of the story, which Musa did. Following Musa's explanation, the court found that he had violated his supervised release and sentenced him to prison for three years. When Musa's counsel reminded the court that the guideline range before the court was three to nine months, the court replied, "I can go outside the guidelines," and gave as the basis for its departure that Musa "is a danger to the community."

Musa filed a timely notice of appeal. Thereafter, Musa's counsel filed a motion for reconsideration with the district court, to which he attached the report of a mental evaluation performed by Dr. Manuel St. Martin and the declaration of Ms. Hummer, which stated that she had given Musa permission to take her car and that she has "never felt threatened by Mr. Musa nor afraid of him." The government opposed the motion for reconsideration on the grounds that it was not timely filed

and set forth no new facts warranting reconsideration. The district court summarily denied the motion.

## DISCUSSION

### I. Length of Sentence

■ This court reviews for an abuse of discretion a district court's decision to revoke a term of supervised release. *See United States v. Schmidt*, 99 F.3d 315, 320 (9th Cir.1996).

According to 18 U.S.C. § 3583(e)(3), a district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. However, because the offenses that resulted in Musa's original term of supervised release were Class B felonies, the district court could not sentence Musa to more than three years in prison for violating his supervised release. *See* 18 U.S.C. § 3583(e)(3). Musa concedes that his conviction for witness intimidation gave the court a proper basis to revoke his supervised release; he challenges only the length of sentence imposed and the court's alleged failure to set forth its reasons for departing from the guideline range.

■. When a court revokes supervised release, 18 U.S.C. § 3583(e) requires the court to consider the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(6).[1] Subsection (a)(4)(B) specifically

---

1. Those sections state as follows:

(a)(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(4) the kinds of sentence and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines is-

sued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

addresses sentencing for violations of supervised release and directs the court to consider "the applicable guidelines or policy statements issued by the Sentencing Commission." The Sentencing Commission has only issued "advisory policy statements" applicable to revocations of probation and supervised release instead of mandatory guidelines. U.S.S.G. Ch. 7, Pts. A1, A3(a); *see also United States v. George,* 184 F.3d 1119, 1121 (9th Cir.1999) ("Because the Commission has not yet issued guidelines relating to revocation of supervised release or changed its view that the Chapter 7 policy statements are merely advisory, we see no reason to reduce the flexibility of district courts in sentencing supervised release violators."). We have held that a district court, when revoking supervised release, has discretion to go outside the suggested sentencing range of the policy statements up to the statutory maximum listed in 18 U.S.C. § 3583(e)(3). *See George,* 184 F.3d at 1122–23 (finding no error where the district court considered the 7– to 13–month range in the policy statements of Chapter 7, rejected it, and sentenced the defendant to 23 months imprisonment). The policy statement range for Musa's violation of the conditions of his supervised release is three to nine months, *see* U.S.S.G. § 7B1.4, but the statutory maximum, as previously noted, is three years, *see* 18 U.S.C. § 3583(e)(3).

■■■ Musa contends that the sentence is illegal because the district court failed adequately to set forth its reasons for departing from the recommended guidelines as required by 18 U.S.C. § 3553(c). Because the district court went outside the policy statement range, 18 U.S.C. § 3553(c)(2) applies and requires the district court to state "in open court" the "specific reason for the imposition of a sentence different from that described" in the policy statement. "These reasons must be sufficiently specific to allow this court to conduct a meaningful review." *United States v. Montenegro–Rojo,* 908 F.2d 425, 428 (9th Cir.1990). In this case, the district court gave a specific reason for going outside the policy statement range.

After finding Musa to be in violation of the conditions of his supervised release and noting that it was going outside of the guideline range, the district court specifically found Musa to be a "danger to the community." While not a model of detail, this explanation is sufficient to provide us with a basis to review the sentence, and thus meets the requirements of 18 U.S.C. § 3553(c)(2).

■■■ Musa also contends that the district court erred in concluding that he was "a danger to the community." However, there is sufficient evidence in the record to support the district court's finding. Musa was convicted of a crime which involved a threat of violence against another person. The victim, Ms. Hummer, called the police to report that Musa had threatened to kill her and obtained a restraining order against him, which was still in force when the USPO submitted its final letter to the district court. The USPO advised the court of Musa's "unstable mental state and his apparent propensity to make rash decisions" and of its conclusion that Musa posed a threat to the community and the victim. Musa's submission of Ms. Hummer's declaration stating that she was never afraid of Musa does not significantly affect the inquiry, because it is within a district court's discretion to give more weight to the contrary evidence contained in the USPO letter. Nor does the report of Musa's psychiatrist command a contrary result. That report notes that Musa's "poor impulse control when he becomes anxious does not result in physical violence, but he does have suicidal thoughts." It also noted that, although Musa's medication "decreases his irritability and anxiety," he admitted that he occasionally missed a dose. Considering all the available evidence, the district court's finding that Musa was a "danger to the community" was not unreasonable.

Accordingly, the district court did not abuse its discretion in departing from the policy statement range and sentencing Musa to the statutory maximum three

years in prison for violating the conditions of his supervised release.

## II. Substitution of Counsel Request

A supervised release revocation hearing in which a sentence is determined is subject to the requirements of the Sixth Amendment. *See United States v. D'Amore*, 56 F.3d 1202 (9th Cir.1995) (reversing order of district court revoking probation because the court abused its discretion in denying motion to substitute counsel), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999) (en banc). This court reviews for an abuse of discretion a district court's denial of a request for substitute counsel. *See United States v. Gonzalez*, 113 F.3d 1026, 1028 (9th Cir.1997).

In reviewing the district court's exercise of discretion, we consider three factors: (1) the timeliness of the motion and the extent of resulting inconvenience or delay; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense. *D'Amore*, 56 F.3d at 1204; *United States v. Walker*, 915 F.2d 480, 482 (9th Cir.1990); *see also Schell v. Witek*, 218 F.3d 1017 (9th Cir.2000) (en banc) (reaffirming that the three-factor abuse of discretion standard is "the correct methodology for reviewing federal cases on direct appeal"). However, "[b]efore the district court can engage in a measured exercise of discretion, it must conduct an inquiry adequate to create a 'sufficient basis for reaching an informed decision.'" *D'Amore*, 56 F.3d at 1205

(quoting *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir.1986)).

In this case, the district court made no inquiry at all. When Musa's counsel informed the court that Musa would "like to make a request of the Court for new counsel," the district court responded simply, "No. I don't see any reason to. You have been representing him, and there seems to be no reason for new counsel," and then directed the government to begin presenting its case.[2] That was error. *See United States v. Torres–Rodriguez*, 930 F.2d 1375, 1381 (9th Cir. 1991) (holding that the trial court erred in failing to inquire into nature of conflict and amount of delay required in substituting counsel), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *Walker*, 915 F.2d at 483 (holding that the district court erred in making only a limited inquiry and failing to inquire into causes underlying defendant's dissatisfaction with his attorney). It is settled that a district court "may not deny a substitution motion simply because the court thinks current counsel's representation is adequate." *D'Amore*, 56 F.3d at 1206. Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense. By not conducting any inquiry into Musa's reasons for requesting substitute counsel, the district court could not make an informed decision on that request.

The absence of any inquiry by the district court also deprives this court of a sufficient basis to conduct our review of Musa's request. *See Torres–Rodriguez*, 930 F.2d at 1381 ("We have no way of

---

2. Musa's request was made on the day of the sentencing hearing. Although a district court has discretion to deny an untimely substitution of counsel motion, the court here did not base its denial of Musa's request on untimeliness grounds. Moreover, concerns about timeliness and delay are less significant for motions made on the day of a supervised release revocation hearing than for those made on the morning of trial. Revocation

hearings do not carry the same potential for substantially disrupting the court's and the parties' schedules, because they generally are not lengthy affairs and do not involve juries or substantial numbers of witnesses. *Cf. Menefield v. Borg*, 881 F.2d 696, 701 (9th Cir.1989) (noting the "substantial practical distinction between delay on the eve of trial and delay at the time of a post-trial hearing").

knowing the nature of Torres' complaint with his appointed counsel, because the trial judge foreclosed all explanations of any kind regarding the motion."). We know that Musa complains that his counsel failed to provide any mitigating evidence at the revocation hearing apart from a letter written by Musa's daughter, and that counsel did not submit either Ms. Hummer's declaration stating that she was not afraid of Musa or Dr. St. Martin's psychiatric report until the motion for reconsideration even though both were obtained before the initial hearing. We have no developed record on counsel's reasons for his actions, however, or on the quality of communication between him and Musa. Accordingly, we vacate the sentence and remand to the district court for a hearing on the nature of the conflict between Musa and his attorney. If the district court finds there was a breakdown in communication, the court should then inquire whether the breakdown prevented an adequate defense at the revocation hearing. If the breakdown prevented an adequate defense, then the court should appoint another attorney for Musa and conduct a new revocation hearing. If, after a thorough inquiry, the district court finds no breakdown in communication that prevented an adequate defense, it may reinstate the sentence.

VACATED and REMANDED for further proceedings consistent with this opinion.