**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Victor Lamont BROWN, Defendant— Appellant.**

No. 01–10058.
D.C. No. CR–98–05294–REC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 2002.

Decided June 4, 2002.

Before HUG and BERZON, Circuit Judges, and LASNIK,* District Judge.

## MEMORANDUM **

Victor Lamont Brown ("Brown") appeals his jury conviction and sentence on three counts: (1) conspiracy to distribute, and to possess with the intent to distribute, cocaine under 21 U.S.C. §§ 846 and 841(a)(1); (2) possession of cocaine with the intent to distribute under 21 U.S.C. § 841(a)(1); and (3) criminal forfeiture of $1,090,968.00 under 21 U.S.C. § 853. We have jurisdiction over Brown's timely appeal under 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the factual and procedural history of this case, we do not recount it here.

### I

■ Brown first contends that the district court erred in denying his motions for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and to suppress evidence seized during an August 7, 1998

---

* Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

search of his home. The district court held that although the government admitted to the misstatement in the search warrant affidavit, the misstatement was immaterial to the magistrate's finding of probable cause. We review *de novo* the district court's denial of Brown's motions. *See United States v. Murillo,* 255 F.3d 1169, 1174 (9th Cir.2001); *United States v. Reeves,* 210 F.3d 1041, 1044 (9th Cir.2000).

We agree with the district court that the misstatement in the affidavit was immaterial. Thus, there was no justification for a *Franks* hearing. However, we affirm the district court's decision on an alternative ground, relying on *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 592–93, 151 L.Ed.2d 497 (2001). *See Tanaka v. Univ. of S. Cal.,* 252 F.3d 1059, 1062 (9th Cir.2001) (this court may affirm the district court on any ground supported by the record). The search warrant affidavit stated that Brown was on active felony probation and subject to warrantless searches and seizures. Brown does not dispute the truth of this statement. In *Knights,* the Supreme Court held that the Fourth Amendment requires no more than reasonable suspicion before government officials search the home of a probationer, like Brown, who is subject to a probation condition allowing warrantless searches and seizures. *See Knights,* 122 S.Ct. at 592–93. Reasonable suspicion is a less demanding standard than probable cause, and "'is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person ... is engaged in criminal activity.'" *United States v. Thompson,* 282 F.3d 673, 678 (9th Cir.2002) (*quoting United States v. Rojas–Millan,* 234 F.3d 464, 468–69 (9th Cir. 2000)).

The search warrant affidavit disclosed the following information. Two untested confidential informants had implicated Brown in large-scale cocaine trafficking that involved transporting cocaine to Kansas City, Missouri. One of the untested informants specified that Brown's father would drive the cocaine to Kansas City, and that Ricky Gray was Brown's Kansas City buyer. This informant stated that Brown kept large amounts of cocaine and cash in his house at 2245 Serena in Fresno, California. This informant also reported that Brown was on probation for drug violations.

When the Fresno police received the second tip describing Brown's cocaine operation, a police investigation of Brown's drug activities was already underway. Brown had been arrested at least three times for drug violations, the most recent occurring about five years earlier when Brown, with $30,000 in his possession, attempted to purchase five kilograms of cocaine from an undercover officer. Brown was on active felony probation and subject to warrantless searches and seizures. The Fresno police had information that Brown had traveled to Kansas City on numerous occasions during the previous two years. On one occasion, the police encountered Brown in the Fresno airport returning from Kansas City with his father and Ricky Gray, who had been specified as participants in Brown's cocaine operation.

After receiving the second tip, the Fresno police conducted spot checks at 2245 Serena, through which the police confirmed that Brown resided there. During a spot check on the day before the search warrant issued, the police observed Brown get into a vehicle with Charles Young, whom the police suspected of cocaine trafficking.

The above-described information amply satisfies the standard of reasonable suspicion, and entitled the government to search Brown's residence pursuant to his

probation condition permitting warrantless searches and seizures. *See United States v. Stokes*, 286 F.3d 1132, 1135–36 (9th Cir. 2002) (reasonable suspicion existed to search the vehicle of a probationer subject to warrantless searches and seizures). We affirm the district court's denial of Brown's motions on this basis.

## II

■ Second, Brown argues that the district court erred in denying his motion, which he made on the day before trial, to discharge Jerome Mullins ("Mullins"), the fourth attorney to represent Brown in this case. We review for an abuse of discretion the district court's denial of Brown's motion to substitute counsel. *See United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir.2000). In exercising its discretion, the district court must balance the defendant's Sixth Amendment right to counsel against the government's interest in the prompt and efficient administration of justice. *United States v. D'Amore*, 56 F.3d 1202, 1204 (9th Cir.1995), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir.1999) (en banc).

We consider three factors in reviewing the district court's denial of Brown's motion for substitution: (1) the adequacy of the district court's inquiry into Brown's complaints, (2) whether the conflict between Brown and Mullins was so great that it resulted in a total lack of communication, preventing an adequate defense, and (3) the timeliness of the motion and the extent of the inconvenience or delay that would result from granting the motion. *See Musa*, 220 F.3d at 1102.

### A

"Before the district court can engage in a measured exercise of discretion, it must conduct an inquiry adequate to create a sufficient basis for reaching an informed decision." *D'Amore*, 56 F.3d at 1205 (internal quotations omitted); *see also Musa*, 220 F.3d at 1102.

We conclude that under the particular circumstances of this case, the district court's limited inquiry was sufficient. At the hearing on Mullins' representation, the district court found that Brown's earlier attorneys had likewise determined that Brown's desired defense was not feasible. Denying his motion, the court said to Brown's "[T]here's no sense just shopping for [counsel] that isn't ever going to [bring this defense]." The district court did not abuse its discretion in refusing to obtain a fifth attorney's opinion on the merits of Brown's desired defense.

### B

■ Brown argues that substitution of counsel was necessary because his conflict with Mullins was so great that it resulted in a total lack of communication, preventing an adequate defense. We find that the record does not support Brown's assertion.

At the hearings on Brown's motions to discharge his second and third attorneys, Brown complained about his attorneys' handling of the defense and about his lack of communication with the attorneys. By contrast, at the hearing on Mullins' representation, Brown challenged only Mullins' choice of defense strategy. Brown voiced no dissatisfaction regarding the frequency of Mullins' visits, telephone contacts, or written communications. To the contrary, Brown's complaints about Mullins' performance indicated that Brown and Mullins were communicating, albeit disagreeing about what defense strategy to pursue.

Defendants have no Sixth Amendment right to a "meaningful relationship" with counsel. *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Moreover, when a defendant and counsel

are communicating, but disagreeing about fundamental issues of trial strategy, the conflict between them is not so great as to require the substitution of counsel. *See United States v. Corona–Garcia*, 210 F.3d 973, 977 (9th Cir.2000).

### C

██ Mullins had been representing Brown for almost a year when Brown moved to discharge Mullins. Brown's motion, made on the day before trial, was untimely. *See United States v. Castro*, 972 F.2d 1107, 1109 (9th Cir.1992) (motion for substitution made three days before trial was untimely); *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir.1991) (motion for substitution made six days before trial was untimely). Furthermore, because there is no evidence that substitute counsel was available and able to go immediately to trial, substitution would have required a continuance. *See United States v. Torres–Rodriguez*, 930 F.2d 1375, 1381 (9th Cir. 1991), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137, 150, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (noting that "it would be extremely unlikely that counsel substituted into the proceeding at the commencement of trial would be prepared to go forward"). This court has "consistently held that a district court has broad discretion to deny a substitution motion made on the eve of trial, particularly where it would require the grant of a continuance." *Castro*, 972 F.2d at 1109.

"However, even when the motion is made on the day of trial, the court must make a balancing determination, carefully weighing the resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice." *D'Amore*, 56 F.3d at 1206; *see also United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir.1993), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir.1999) (en banc).

We hold that the district court did not abuse its discretion in striking the balance that it did between Brown's qualified right to counsel of his choice and the government's interest in the prompt and efficient administration of justice. Accordingly, we affirm the district court's denial of Brown's motion for substitution. *Cf. United States v. Garrett*, 179 F.3d 1143, 1147 (9th Cir. 1999) (en banc) (the district court did not abuse its discretion in denying a last-minute motion for a continuance, to allow for the substitution of defense counsel, when the court had granted previous motions and shown great patience and concern for the defendant's right to counsel).

### III

Brown next claims that Mullins rendered ineffective assistance at trial. Ordinarily, ineffective-assistance-of-counsel arguments are not appropriate for direct review and should be brought in habeas corpus proceedings pursuant to 28 U.S.C. § 2255. *United States v. Reyes–Platero*, 224 F.3d 1112, 1116 (9th Cir.2000). We decline to consider Brown's claims because factual development is necessary to evaluate the alleged deficiency in Mullins' representation.

### IV

██ Finally, Brown contends that his sentence violates the dictates of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The facial constitutionality argument is foreclosed by this court's recent decision in *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002) (en banc), which upheld the constitutionality of 21 U.S.C. § 841.

Brown's claim that his sentence violated *Apprendi* is also without merit. The government alleged in its indictment that Brown's drug offenses involved five kilograms or more of cocaine. The jury found

this allegation to be true beyond a reasonable doubt. Under 21 U.S.C. § 841(b)(1)(A)(ii), five kilograms or more of cocaine triggers a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. Therefore, the life sentences that Brown received complied with *Apprendi* because the drug quantity and type that fixed the maximum sentence for his conviction were charged in the indictment and found by the jury beyond a reasonable doubt. *See Buckland,* 289 F.3d 558, 567.

AFFIRMED.